UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

|  |  |  |
|---|---|---|
| NORFOLK SOUTHERN RAILWAY COMPANY | ) ) ) ) | |
| Plaintiff, | ) ) | C.A. No. 5:22-cv-00118 |
| v. | ) ) | |
| C&S RAIL SERVICES, LLC | ) ) ) | |
| Defendant. | ) ) | |

## CONSENT JUDGMENT ON THE PLEADINGS

THIS CAUSE coming on to be heard, and being heard by and with the consent of the Plaintiff Norfolk Southern Railway Company and Defendant, C&S Rail Services, LLC, before the undersigned; and it appearing, pursuant to agreement between and among the parties, that entry of this Consent Order should be allowed, as evidenced by their signatures affixed hereto; and the parties stipulate and consent to the following findings of fact and law and judgment as follows:

### INTRODUCTION

1.  Norfolk Southern Railway Company ("Norfolk Southern") brought this action against C&S Rail Services, LLC ("C&S") alleging C&S breached its contractual obligations by failing to indemnify Norfolk Southern for costs of defense against the claims arising out of the death of Dexter Brown, an employee of C&S, in *Karan Carter, as Personal Representative of the Estate of Dexter Brown and Dexter Brown, II, as Surviving Child of Dexter Brown v. Norfolk*

*Southern Railway Co*, Civil Action No. 5:20-CV-00080 (TES), pending in United States District Court for the Middle District of Georgia, Macon Division (the "*Dexter Brown* Lawsuit").

2. Norfolk Southern also alleges C&S has breached its contractual obligations by failing to purchase insurance as required by the contract. C&S's contractual and anticipatory breaches have allegedly left Norfolk Southern unreimbursed for indemnified costs and a settlement payment in connection with the *Dexter Brown* Lawsuit.

3. This action arises out of a February 5, 2018, fatal crossing collision (the "Collision"). Following the Collision, relatives of Mr. Brown, a C&S employee who died as a result of injuries he suffered in the Collision, brought the *Dexter Brown* Lawsuit against Norfolk Southern. The Collision occurred at a railroad crossing at West Lawson Street in Hahira, Georgia ("Crossing") on a line of track covered by a project contract between Norfolk Southern and C&S, entered on January 1, 2018 (the "Project Contract"). The Project Contract was in effect at the time of the Collision. The Project Contract includes C&S's contractual undertaking to indemnify Norfolk Southern, including C&S's obligation to indemnify Norfolk Southern for claims made by C&S employees who allege they were injured. Project Contract, § 5.1(a).

4. The Project Contract also includes C&S's contractual undertaking to purchase a Commercial General Liability ("CGL") insurance policy, for itself and for Norfolk Southern as an additional insured, which includes "contractual liability coverage" for its indemnification obligations under the Project Contract. Project Contract, § 5.2(c).

5. Despite repeated demands by Norfolk Southern, C&S failed to defend and indemnify Norfolk Southern with respect to the *Dexter Brown* Lawsuit. C&S failed to indemnify Norfolk Southern for amounts Norfolk Southern has incurred to date in defending against the *Dexter Brown* Lawsuit necessitating this action.

6. Norfolk Southern filed this action seeking a declaration of the rights, duties, and liabilities of C&S pursuant to the Project Contract with respect to the *Dexter Brown* Lawsuit. Norfolk Southern also seeks compensatory damages from C&S for breaches of contract because of its alleged failure to indemnify Norfolk Southern for the costs of its defense against the *Dexter Brown* Lawsuit and to obtain proper insurance as required by the Project Contract.

7. Finally, Norfolk Southern and C&S have agreed as part of this consent order that C&S will assign its rights and claims as against Cincinnati Insurance Company, its insurer, and ECM Solutions, LLC, its insurance broker.

8. Norfolk Southern filed its Complaint on August 31, 2022 [DE-1] and the Summons was issued by the clerk of Court on September 1, 2022 [DE-4]. An affidavit of service was filed on October 17, 2022 [DE-7].

## **PARTIES AND JURISDICTION**

9. As a preliminary matter, this Court finds that Plaintiff Norfolk Southern is and at all times pertinent was a Virginia corporation. At the time of this filing, Norfolk Southern's principal place of business is in Atlanta, Georgia. Further, Defendant C&S is and at all times pertinent was a Georgia limited liability company. C&S has three members: Jack Wilson, Dustin Wilson, and Jason Wilson. Jack Wilson is domiciled in Statesville, North Carolina and, therefore, is a citizen of North Carolina. Dustin Wilson is domiciled in Denver, North Carolina and, therefore, is a citizen of North Carolina. Jason Wilson is domiciled in Mandeville, Louisiana and, therefore, is a citizen of Louisiana.

10. The Summons and Complaint were served on C&S by certified mail on September 9, 2022, and by the Wake County Sheriff's office on September 29, 2022 [DE-7]. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332. This action is between

citizens of different states and the amount in controversy exceeds the $75,000 jurisdictional minimum. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

11. C&S has not filed a response to the Complaint but has agreed to entry of this consent order.

12. This Court has authority to grant a declaratory judgment pursuant to 28 U.S.C. § 2201 because Norfolk Southern and C&S are engaged in an actual controversy susceptible to specific relief over the meaning of provisions in the Project Contract. Because the parties are residents of different states and the dispute between them exceeds $75,000, this controversy is within the jurisdiction of this Court.

## FACTUAL BACKGROUND

### I. The Project Contract.

13. It is undisputed that on January 1, 2018, Norfolk Southern and C&S entered into the Project Contract. A true and correct copy of the Project Contract was attached to the Complaint as Exhibit 1. [DE-1]. Pursuant to the Project Contract, Norfolk Southern retained C&S to perform work for Norfolk Southern on track running through Hahira, Georgia. C&S was obligated to perform that work "in a safe, efficient and workmanlike manner strictly in accordance with the requirements of this Contract." *See* Exhibit 1 to Complaint, § 2.3, [DE-1].

14. As a part of its obligation, C&S was also responsible for the safety of "the general public and of employees of [Norfolk Southern] and of [C&S]." *See* Exhibit 1 to Complaint, § 2.13, [DE-1]. In recognition of its responsibility for the safety of the C&S and Norfolk Southern employees working pursuant to the Project Contract, Section 5 of the Project Contract requires C&S to:

> [I]ndemnify and hold harmless the Indemnified Parties from and against any and all liability, damages, claims, suits, judgments, costs and expenses (including litigation costs, investigation costs,

4

> reasonable attorney fees[)] . . . arising from or in connection with: (i)(A) any . . . loss of life . . . to any Contractor Party arising from, incident to or occurring in connection with the performance by the Contractor of this Contract or the presence of any Contractor Party on the property of the Railway, unless such loss of life . . . was caused *solely* by the negligence or intentional misconduct of Railway . . . .

*See* Exhibit 1 to Complaint, § 5.1(a) & (i)(A), [DE-1]. ("Indemnification Provision").

15. The Project Contract also obligated C&S to buy a CGL insurance policy that includes "contractual liability coverage" for its indemnification obligations under the Project Contract. The insurance provision of the Project Contract requires C&S to obtain:

> Commercial General Liability Insurance with a combined single limit of not less than Two Million Dollars ($2,000,000) per occurrence for injury to or death of persons and damage to or loss of destruction of property. Such policy shall be endorsed to provide products and completed operations coverage and contractual liability coverage for liability assumed under this Contract. The contractual liability coverage shall be of a form that does not deny coverage for operations conducted within fifty (50) feet of any railroad hazard. The policy shall not deny any obligation of the insured under the Federal Employers Liability Act, as amended. In addition, such policy or policies shall be endorsed to name [Norfolk Southern] as an additional insured and shall include a severability of interests provision; . . . .

*See* Exhibit 1, § 5.2(c) ("Insurance Provision"), [DE-1].

16. C&S acquired a CGL insurance policy from The Cincinnati Specialty Underwriters Insurance Company ("Cincinnati"), Policy Number CSU 0065833, for the policy period that includes the date on which the Collision occurred ("Policy"). A true and correct copy of the Policy was attached as Exhibit 2 to the Complaint. C&S utilized insurance broker ECM Solutions, LLC to procure the policy of insurance from Cincinnati.

**II. The *Dexter Brown* Lawsuit.**

17. It is undisputed in this matter that Mr. Brown was a C&S employee at the time of the Collision. Mr. Brown was not an employee of Norfolk Southern at the time of the Collision.

18. Mr. Brown was professional driver for C&S with a commercial driver's license. At the time of the Collision, Mr. Brown was performing work for C&S. At the time of the Collision, Mr. Brown was driving over the Crossing in a C&S truck and was towing a trailer with C&S equipment that C&S was going to use that day to perform work pursuant to the Project Contract.

19. On February 5, 2018, a stop sign and a crossbuck were in place on each side of the Crossing governing the approach of drivers to the Crossing. Georgia law required Mr. Brown to stop before entering the Crossing and to confirm it was safe before proceeding over the Crossing.

20. It is undisputed by C&S in this matter that pursuant to O.C.G.A. § 40-6-141, the stop sign required Mr. Brown to stop his truck and trailer before entering the Crossing and to proceed only upon exercising due care. *See* O.C.G.A. § 40-6-141 (stating that, when a stop sign is erected at a railroad grade crossing, "the driver of any vehicle shall stop within 50 feet but not less than 15 feet from the nearest rail of such railroad and shall proceed only upon exercising due care").

21. It is further undisputed by C&S that pursuant to O.C.G.A. § 40-6-140, Mr. Brown was required to stop before entering the Crossing and prohbited Mr. Brown from proceeding over the Crossing when an approching train was plainy visible and in hazardous proximity to the Crossing. *See* O.C.G.A. § 40-6-140 (stating that, "[w]henever any person driving a vehicle approaches a railroad grade crossing, such driver shall stop within 50 feet but not less than 15 feet from the nearest rail of such railroad and shall not proceed until he can do so safely,

when: . . . [a]n approaching train or other on-track equipment is plainly visible and is in hazardous proximity to such crossing").

22. It is undisputed by C&S in this matter that on February 5, 2018, Mr. Brown failed to exercise due care when he failed to stop his truck and trailer before entering the Crossing. Instead of stopping and exercising due care to confirm it was safe to enter the Crossing, C&S concedes that Mr. Brown drove onto the Crossing directly into the path of a plainly visible Norfolk Southern train that was blowing its horn to warn of its approach to the Crossing. As a result of Mr. Brown's failure to stop and yield, a collision occurred between the Norfolk Southern train and Mr. Brown's truck.

23. Mr. Brown died as a result of injuries he suffered in the Collision. On January 27, 2020, Karan Carter, who is the personal representative of Mr. Brown, and Dexter Brown, II, one of Mr. Brown's adult children, brought the *Dexter Brown* Lawsuit against Norfolk Southern. It is undisputed by C&S that the complaint filed in the *Dexter Brown* Lawsuit ("*Dexter Brown* Complaint") alleges a right of recovery pursuant to the Federal Employees Liability Act ("FELA"), 45 USC § 53 et seq., and also alleges a right of recovery pursuant to common law negligence and seeks punitive damages and expenses of litigation.

24. C&S concedes that on or around February 25, 2020, Norfolk Southern provided notice of the Collision and the *Dexter Brown* Lawsuit to C&S and requested that C&S indemnify Norfolk Southern pursuant to the Project Contract. Further, on or around February 25, 2020, Norfolk Southern also provided notice of the Collision and the *Dexter Brown* Lawsuit to C&S's CGL insurer, Cincinnati. In its notice to Cincinnati, Norfolk Southern requested coverage of its defense costs and for any eventual judgment or settlement.

25. On April 23, 2020, Cincinnati issued a letter to Norfolk Southern denying Norfolk Southern's demand for coverage. In its letter, Cincinnati recognized that Norfolk Southern is an additional insured, however, Cincinnati ultimately denied any coverage to Norfolk Southern by relying on exclusionary language in the Policy's Additional Insured Endorsement.

26. Cincinnati relied on the "Employee Bodily Injury Exclusion." Under this exclusion, Cincinnati claimed that coverage does not apply to "'[b]odily injury . . . to any employee of [C&S] or to any obligation of the additional insured to indemnify another because of damages arising out of such injury." *See* Exhibit 2, Additional Insured Endorsement, ¶ B.3, [DE-1]. Cincinnati argued that the language of the Endorsement, together with the *Dexter Brown* Complaint's allegation that Mr. Brown was a C&S employee, extinguished Norfolk Southern's right to coverage.

27. Cincinnati also contended that the Additional Insured Endorsement excludes coverage for an additional insured's liability where that liability is for bodily injury "for which the Named Insured is afforded no coverage under this policy of insurance." *See* Exhibit 2, Additional Insured Endorsement, ¶ B.4, [DE-1]. Cincinnati maintained that, because Mr. Brown was a C&S employee, C&S would have no coverage under its policy for a suit based upon his injuries and, therefore, Norfolk Southern does not have coverage.

28. On October 26, 2021, Cincinnati issued a supplementary coverage letter, reiterating the position it outlined in its April 23, 2020, letter and also denying coverage to C&S for damages owed to Norfolk Southern by assumption of liability in an insured contract by relying on exclusionary language in the Policy's Contractor-Changes to Commercial General Liability Coverage Part Endorsement.

8

29. Cincinnati asserted that the Contractor-Changes to Commercial General Liability Coverage Part Endorsement excludes coverage to C&S for any assumption of liability in an insured contract because the Endorsement states that the Employer's Liability Exclusion applies irrespective of "whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury, including any obligation to pay damages by reason of assumption of liability in an 'insured contract' or agreement." *See* Exhibit 2, Contractor-Changes to Commercial General Liability Coverage Part Endorsement, Employer's Liability Exclusion, ¶ A.2, [DE-1].

30. Pursuant to the Project Contract, C&S is contractually obligated to secure, for itself and for Norfolk Southern as an additional insured, CGL insurance coverage with a limit of not less than $2 million per occurrence for injury to or death of people. *See* Exhibit 1 attached to Complaint, § 5.2. C&S is specifically obligated to procure coverage that "shall not deny any obligation of the insured under the Federal Employers Liability Act, as amended." *See* Exhibit 1 attached to Complaint, § 5.2, [DE-1].

31. The complaint in the *Dexter Brown* Lawsuit alleges a right of recovery pursuant to FELA (which alleged right of recovery Norfolk Southern denies because, inter alia, Mr. Brown was not a Norfolk Southern employee) and pursuant to common law negligence. FELA provides a legal basis for injured employees to recover monetary damages for injuries sustained due to the negligence of a railroad carrier, its agents, servants or employees.

32. When Norfolk Southern, as an additional insured, provided Cincinnati with a claim involving an underlying suit brought pursuant to FELA and pursuant to common law negligence, Cincinnati denied any obligation to defend or indemnify Norfolk Southern.

Therefore, C&S failed to comply with its obligation to provide Norfolk Southern with insurance as required by the Project Contract.

33. Regardless of whether there is coverage for Norfolk Southern under the Policy provided by Cincinnati, C&S concedes that it is contractually obligated to provide indemnification to Norfolk Southern in connection with certain liabilities, including the *Dexter Brown* Lawsuit. Norfolk Southern has repeatedly asked C&S to indemnify Norfolk Southern in connection with the *Dexter Brown* Lawsuit, including indemnification for defense costs Norfolk Southern has incurred.

34. C&S has acknowledged that it has an indemnification obligation to Norfolk Southern in connection with the *Dexter Brown* lawsuit and any eventual judgment or settlement. However, C&S has stated that it does not have the financial ability to indemnify Norfolk Southern in connection with the *Dexter Brown* Lawsuit.

35. C&S also has failed to indemnify Norfolk Southern for amounts Norfolk Southern has incurred in defending against the *Dexter Brown* Lawsuit. As a result, Norfolk Southern has incurred expenses by continuing to investigate and defend the claims raised in the *Dexter Brown* Lawsuit, including, but not limited to, attorneys' fees already incurred.

## FINDINGS OF LAW AND JUDGMENT

36. This Court holds that Pursuant to the Project Contract, C&S is obligated to:

> [I]ndemnify and hold harmless the Indemnified Parties from and against any and all liability, damages, claims, suits, judgments, costs and expenses (including litigation costs, investigation costs, reasonable attorney fees[)] . . . arising from or in connection with: (i)(A) any . . . loss of life . . . to any Contractor Party arising from, incident to or occurring in connection with the performance by the Contractor of this Contract or the presence of any Contractor Party on the property of the Railway, unless such loss of life . . . was caused *solely* by the negligence or intentional misconduct of Railway . . . .

*See* Exhibit 1 attached to Complaint, § 5.1(a) & (i)(A), [DE-1]. This Court further finds that the Indemnification Provision obligates C&S to indemnify Norfolk Southern in the event of a suit for: (i) the loss of life of a Contractor Party, such as an employee of C&S; (ii) where that suit arose from, was incident to, or occurred in connection with "the performance by [C&S] of [the Project] Contract" or with "the presence of [C&S] on the property of [Norfolk Southern]." *See* Exhibit 1 to Complaint, § 5.1(a) & (i)(A), [DE-1]. C&S avoids the Project Contract's indemnification obligation only if (iii) the loss of life "was caused *solely* by the neglience" of Norfolk Southern. *See* Exhibit 1 attached to Complaint, § 5.1(a)(i)(A), [DE-1].

37. This Court further finds that on February 5, 2018, Mr. Brown approached and entered the Crossing in a C&S truck and was towing C&S equipment on a trailer in connection with his work for C&S that day. The C&S equipment was to be used for work that C&S was performing that day pursuant to the Project Contract.

38. The Court finds that C&S concedes in this matter that Mr. Brown, in violation of Georgia law and his duty to exercise due care in the operation of his vehicle, failed to stop his vehicle before entering the Crossing and, as a result, drove directly into the path of a plainly visible Norfolk Southern train in hazardous proximity to the Crossing, which was blowing its horn to warn of its approach to the Crossing. Mr. Brown collided with the Norfolk Southern train and sustained injuries that resulted in his death.

39. The Court holds that at the time of the Collision, Mr. Brown was an employee of C&S, making him a "Contractor Party" pursuant to the Project Contract. The parties to this matter concede and stipulate that Mr. Brown's "loss of life" arose from, was incident to, and occurred in connection with the performance by C&S of the contract because, when the Collision occurred, he was driving a C&S truck over the Crossing to perform work for C&S that C&S was

obligated to undertake pursuant to the Project Contract and Mr. Brown was towing a trailer with C&S equipment that was to be used in performance of the Project Contract.

40. The parties to this matter agree that Mr. Brown's negligence in the *Dexter Brown* lawsuit was disputed but that Norfolk Southern alleged his negligence was a proximate cause of his death. The parties agree that Mr. Brown was working as an employee of C&S at the time of the accident.

41. Pursuant to the Indemnification Provision, C&S has an obligation to indemnify Norfolk Southern from the claims raised following the death of Mr. Brown, including but not limited to litigation costs and attorney fees. Norfolk Southern provided notice of the Collision and the *Dexter Brown* Lawsuit to C&S on or around February 25, 2020.

42. Norfolk Southern asked C&S to indemnify Norfolk Southern against the claims raised in relation to the *Dexter Brown* Lawsuit on various occasions, including but not limited to communications dated February 25, 2020, May 7, 2020, May 28, 2020, June 15, 2020, and September 30, 2021. C&S has failed to state that it is willing and financially able to accept Norfolk Southern's repeated demands for indemnification in the event of a settlement of or judgment in the *Dexter Brown* Lawsuit. Where C&S has an indemnification obligation, the Project Contract's Indemnification Provision includes "costs and expenses (including litigation costs, investigation costs, reasonable attorney fees[)]." *See* Exhibit 1 attached to Complaint, § 5.1(a) & (i)(A), [DE-1].

43. On September 30, 2021, Norfolk Southern asked C&S to indemnify Norfolk Southern for $107,647.73 of reasonable attorneys' fees incurred through July 2021. C&S has failed to state that it is willing and financially able to indemnify Norfolk Southern for those

12
Case 5:22-cv-00118-KDB-DSC   Document 11   Filed 01/31/23   Page 12 of 17

reasonable attorneys' fees. Accordingly, an actual controversy of a justiciable nature has arisen and exists between Norfolk Southern and C&S concerning the allegations set forth in Count One.

44. This Court further holds that Norfolk Southern provided notice of the Collision and the *Dexter Brown* Lawsuit to C&S and asked C&S to indemnify Norfolk Southern against the claims raised in relation to the *Dexter Brown* Lawsuit on various occasions.

45. This Court hereby finds that C&S failed to indemnify and defend Norfolk Southern and that Norfolk Southern is awarded judgment for its attorney's fees and any settlement or judgment entered in the *Dexter Brown* Lawsuit. Based on the affidavit of Terry Richey, Director of Claims of Norfolk Southern, the *Dexter Brown* lawsuit has recently settled for a $400,000.00 payment by Norfolk Southern and Norfolk Southern incurred $244,214.58 in attorney's fees investigating and defending the *Dexter Brown* lawsuit.

46. C&S has failed to state that it is willing and financially able to accept Norfolk Southern's repeated demands for indemnification in the event of a settlement of or judgment in the *Dexter Brown* Lawsuit and has actually stated that it has no ability to defend or indemnify Norfolk Southern as required by the Project Contract. Where C&S has an indemnification obligation, the Project Contract's Indemnification Provision includes "costs and expenses (including litigation costs, investigation costs, reasonable attorney fees[)]." *See* Exhibit 1 attached to Complaint, § 5.1(a) & (i)(A), [DE-1].

47. This Court finds that C&S's failure to perform its contractual duty to indemnify Norfolk Southern for reasonable attorneys' fees it has already incurred and submitted to C&S is a breach of the Project Contract.

48. This Court hereby finds that as a direct and proximate result of C&S's breach of its contractual obligation to indemnify, Norfolk Southern has incurred damages.

49. Pursuant to the Project Contract, C&S was contractually obligated to secure a CGL insurance policy with a limit of not less than $2 million per occurrence for injury to or death of people. *See* Exhibit 1 attached to Complaint, § 5.2. The Project Contract also obligates C&S to procure a CGL insurance policy that names Norfolk Southern as an additional insured. *See* Exhibit 1 to Complaint, § 5.2, [DE-1]. C&S was specifically obligated to procure a CGL insurance policy that provides "contractual liability coverage for liability assumed under [the Project] Contract." *See* Exhibit 1 attached to Complaint, § 5.2, [DE-1].

50. C&S was specifically obligated to procure a CGL insurance policy that "shall not deny any obligation of the insured under the Federal Employers Liability Act, as amended." *See* Exhibit 1 attached to Complaint, § 5.2, [DE-1].

51. In this case, C&S should have obtained a CGL insurance policy, for itself and for Norfolk Southern as an additional insured, with a $2 million limit that provided coverage for claims stemming from the death of Mr. Brown, a C&S employee driving a C&S truck and towing C&S equipment to be used in furtherance of the Project Contract. The claims against Norfolk Southern have given rise to an indemnification obligation by C&S. C&S should have obtained a CGL insurance policy providing it with coverage for its indemnification obligation to Norfolk Southern.

52. C&S procured coverage that did not comply with its contractual obligations outlined in the Project Contract. C&S failed to procure proper insurance because the Policy does not apply to "bodily injury to any employee of C&S or to any obligation of the additional insured to indemnify another because of damages arising out of such injury." *See* Exhibit 2 attached to Complaint, Additional Insured Endorsement, ¶ B.3, [DE-1].

53. C&S failed to procure proper insurance because the Policy excludes coverage for an additional insured's liability where that liability is for bodily injury "for which the Named Insured is afforded no coverage under this policy of insurance." *See* Exhibit 2 attached to Complaint, Additional Insured Endorsement, ¶ B.4, [DE-1]. C&S failed to procure proper insurance because the Policy does not extend insured contract coverage to C&S's indemnification obligation. Accordingly, this Court finds that C&S has not complied with its obligation to provide Norfolk Southern with proper insurance.

54. C&S's failure to perform its contractual duty to obtain proper insurance as required by the Project Contract is a breach of the Project Contract. As a direct and proximate result of C&S's breach of its contractual obligation, Norfolk Southern has incurred damage incurred damages in the form of attorney's fees totaling $244,214.58 and settlement payment of $400,000.00.

## CONSENT TO ASSIGNMENT

55. The parties further consent and stipulate that in exchange for Norfolk Southern not seeking or alleging piercing of the corporate veil and attempting to obtain C&S's members' assets to satisfy its obligations under the Project Contract, that C&S agrees to assign to Norfolk Southern any and all claims or choses in action it may have against Cincinnati Insurance Company and ECM Solutions, LLC.

# CONCLUSION AND JUDGMENT

WHEREBY IT IS HEREBY ORDERED, that judgment is entered on behalf of Norfolk Southern against C&S as follows:

A. On its First Cause of Action, declaratory judgment in favor of Norfolk Southern declaring that, under the Project Contract, C&S was obligated to indemnify Norfolk Southern for liabilities and expenses, including attorneys' fees, arising out of the *Dexter Brown* Lawsuit;

B. On its Second Cause of Action, that C&S breached its duty to indemnify under the Project Contract with respect to the *Dexter Brown* Lawsuit;

C. On its Third Cause of Action, that C&S breached its obligation to obtain proper insurance as required under the Project Contract;

D. That Norfolk Southern has incurred damages in the form of attorney's fees totaling $244,214.58 and has paid $400,000.00 in settlement of the *Dexter Brown* Lawsuit. Accordingly, Norfolk Southern is granted a judgment against C&S of $644,214.58 as a sum certain due and owing Norfolk Southern pursuant to this consent judgment;

E. On all Causes of Action, Norfolk Southern is awarded pre-judgment interest, post-verdict and post-judgment interest, the fees and costs of bringing this action until and including the rendition of judgment, and all other just and equitable relief.

F. The parties have further consented and agreed that C&S will execute a written assignment to Norfolk Southern of any and all claims it may have as against Cincinnati Insurance Company, its insurer, and ECM Solutions, LLC, its insurance broker.

So ORDERED

*[Signature]*

Kenneth D. Bell
United States District Judge

**AGREED AND CONSENTED TO BY DEFENDANT:**

s/David W. Hood                                             January 27, 2023
David W. Hood
Patrick Harper Dixon
PO Box 218
34 Second Street NW (28601)
Hickory, NC 28603
v: (828) 322-7741 Ext. 408
f: (828) 485-3213
dhood@phd-law.com

Counsel for C&S Rail Services, LLC

**C&S RAIL SERVICES, LLC**


s/Jack Wilson                                             Date:  January 27, 2023
(Signature)


Jack Wilson
By: (Printed Name)


Its:  Member


**AGREED TO AND CONSENTED TO BY PLAINTIFF:**

*/s/Christopher M. Kelly*                                             January 27, 2023
Christopher M. Kelly (NC Bar No. 24346)
GALLIVAN, WHITE, & BOYD, P.A.
One Morrocroft Centre
6805 Carnegie Blvd., Suite 200
Charlotte, NC  28211
(704) 552-1712 (Phone)
(704) 362-4850 (Fax)
ckelly@gwblawfirm.com
*Attorneys for Plaintiff*
*Norfolk Southern Railway Company*